(Slip Opinion)          OCTOBER  TERM,  2011          1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is
being done in connection with this case, at the time the opinion is issued.
The syllabus constitutes no part of the opinion of the Court but has been
prepared by the Reporter of Decisions for the convenience of the reader.
See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## REYNOLDS *v.* UNITED STATES

CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR
THE THIRD CIRCUIT

No. 10–6549.   Argued October 3, 2011—Decided January 23, 2012

The federal Sex Offender Registration and Notification Act (Act) re-
quires convicted sex offenders to provide state governments with, and
to update, information, *e.g.,* names and current addresses, for state
and federal sex offender registries.  It is a crime if a person who is
"required to register under [the Act]" and who "travels in interstate
. . . commerce" knowingly "fails to register or update a registration."
18 U. S. C. §2250(a).  The Act defines "sex offender" to include offend-
ers who were convicted before the Act's effective date, 42 U. S. C.
§16911(1), and says that "the Attorney General shall have the au-
thority to specify the applicability of the [registration] requirements"
to pre-Act offenders, §16913(d).  The Act, which seeks to make more
uniform and effective a patchwork of pre-Act federal and 50 state reg-
istration systems, became law in July 2006.  In February 2007, the
Attorney General promulgated an Interim Rule specifying that the
Act applies to all pre-Act offenders.  He has since promulgated fur-
ther rules, regulations, and specifications.

Petitioner Reynolds, a pre-Act offender, registered in Missouri in
2005 but moved to Pennsylvania in September 2007 without updat-
ing the Missouri registration or registering in Pennsylvania.  He was
indicted for failing to meet the Act's registration requirements be-
tween September 16 and October 16, 2007.  He moved to dismiss the
indictment on the ground that the Act was not applicable to pre-Act
offenders during that time, arguing that the Attorney General's Feb-
ruary 2007 Interim Rule was invalid because it violated the Constitu-
tion's "nondelegation" doctrine and the Administrative Procedure
Act's notice and comment requirements.  The District Court rejected
on the merits of Reynolds' legal attack on the Interim Rule, but the
Third Circuit rejected his argument without reaching the merits,

concluding that the Act's registration requirements applied to pre-Act offenders even in the absence of a rule by the Attorney General. Thus, it found, the Interim Rule's validity made no legal difference in the outcome.

*Held:* The Act does not require pre-Act offenders to register before the Attorney General validly specifies that the Act's registration provisions apply to them. Pp. 6–13.

(a) This conclusion is supported by a natural reading of the Act's text, which consists of four statements. *Statement One* says that "[a] sex offender shall register, and keep the registration current." *Statement Two* says that, generally, the offender must initially register before completing his "sentence of imprisonment." *Statement Three* says that the sex offender must update a registration within three business days of any change of "name, residence, employment, or student status." *Statement Four* says that "[t]he Attorney General shall have the authority to specify the applicability of the requirements . . . to sex offenders convicted before the enactment of" the Act. §16913. Read naturally, the *Fourth Statement* modifies the *First*. It deals specifically with a subset (pre-Act offenders) of the *First Statement*'s broad general class (all sex offenders) and thus should control the Act's application to that subset. See *Gozlon-Peretz* v. *United States*, 498 U. S. 395, 407. Also, by giving the Attorney General authority to specify the Act's "applicability," not its "nonapplicability," the *Fourth Statement* is more naturally read to confer authority to apply the Act, not authority to make exceptions. This reading efficiently resolves what may have been Congress' concern about the practical problems of applying the new registration requirements to a large number of pre-Act offenders, which could have been expensive and might not have proved feasible to do immediately. It might have thought that such concerns warranted different treatment for different categories of pre-Act offenders. And it could have concluded that it was efficient and desirable to ask the Justice Department, charged with responsibility for implementation, to examine pre-Act offender problems and to apply the new requirements accordingly. This reading also takes Congress to have filled potential lacunae (created by related Act provisions) in a manner consistent with basic criminal law principles. The *Second Statement, e.g.,* requires a sex offender to register before completing his prison term, but says nothing about when a pre-Act offender who has left prison is to register. An Attorney General ruling could diminish such uncertainties, helping to eliminate the kind of vagueness and uncertainty that criminal law must seek to avoid. Pp. 6–9.

(b) The Government's three principal contrary arguments—that the Court's reading conflicts with the Act's purpose of establishing a

Syllabus

national registration system that includes pre-Act offenders; that the Court's reading could lead to an absurdly long implementation delay; and that the Act should be read to apply the requirements immediately and on their own to all pre-Act offenders to avoid the possibility that the Attorney General, who has, but is not required to use, "the authority to specify" requirements, might take no action—are unpersuasive. Some lower courts have read the Attorney General's authority to apply only to pre-Act sex offenders who are unable to comply with the statute's "initial registration" requirements, but that is not what the Act says. Pp. 9–13.

(c) Because the Act's registration requirements do not apply to pre-Act offenders until the Attorney General so specifies, the question whether the Attorney General's Interim Rule is a valid specification matters in this case. P. 13.

380 Fed. Appx. 125, reversed and remanded.

BREYER, J., delivered the opinion of the Court, in which ROBERTS, C. J., and KENNEDY, THOMAS, ALITO, SOTOMAYOR, and KAGAN, JJ., joined. SCALIA, J., filed a dissenting opinion, in which GINSBURG, J., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

———————

No. 10–6549

———————

## BILLY JOE REYNOLDS, PETITIONER *v.* UNITED STATES

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

[January 23, 2012]

JUSTICE BREYER delivered the opinion of the Court.

The federal Sex Offender Registration and Notification Act (Act), 120 Stat. 590, 42 U. S. C. §16901 *et seq.* (2006 ed. and Supp. III), requires those convicted of certain sex crimes to provide state governments with (and to update) information, such as names and current addresses, for inclusion on state and federal sex offender registries. §§16912(a), 16913–16914, 16919(a) (2006 ed.). The Act makes it a crime for a person who is "required to register" under the Act and who "travels in interstate or foreign commerce" knowingly to "fai[l] to register or update a registration . . . ." 18 U. S. C. §2250(a). The question before us concerns the date on which this federal registration requirement took effect with respect to sex offenders convicted before the Act became law.

The Act defines the term "sex offender" as including these pre-Act offenders. 42 U. S. C. §16911(1); see *Carr* v. *United States*, 560 U. S. \_\_\_, \_\_\_ (2010) (slip op., at 7). It says that "[a] sex offender shall register." §16913(a). And it further says that "*[t]he Attorney General shall have the authority to specify the applicability of the [registration]*

*requirements* . . . to sex offenders convicted before the enactment of this chapter . . . ." §16913(d) (emphasis added). In our view, these provisions, read together, mean that the Act's registration requirements do not apply to pre-Act offenders until the Attorney General specifies that they do apply. We reverse a Court of Appeals determination that, in effect, holds the contrary.

I

A

The new federal Act reflects Congress' awareness that pre-Act registration law consisted of a patchwork of federal and 50 individual state registration systems. See 73 Fed. Reg. 38045 (2008). The Act seeks to make those systems more uniform and effective. It does so by repealing several earlier federal laws that also (but less effectively) sought uniformity; by setting forth comprehensive registration-system standards; by making federal funding contingent on States' bringing their systems into compliance with those standards; by requiring both state and federal sex offenders to register with relevant jurisdictions (and to keep registration information current); and by creating federal criminal sanctions applicable to those who violate the Act's registration requirements. 18 U. S. C. §2250(a) (criminal provision); 42 U. S. C. §§16911(10), 16913–16916 (2006 ed. and Supp. III) (registration requirements); §16925 (federal funding); §129, 120 Stat. 600 (repeal of earlier laws).

The Act's criminal penalty applies to "[w]ho[m]ever . . . is required to register under [the Act]." 18 U. S. C. §2250(a). It says that such a person (a federal sex offender or a nonfederal sex offender who travels in interstate commerce) must not knowingly fail "to register or update a registration *as required by [the Act]." Ibid.* (emphasis added); see Appendix, *infra*, at 14.

The relevant registration requirements are set forth in

an Act provision that states:

> "**Registry requirements for sex offenders**
>
> "**(a) In general**
> "*A sex offender* [defined to include any offender who was convicted of a sex offense] *shall register, and keep the registration current*, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student. . . .
>
> "**(b) Initial registration**
> "The sex offender shall initially register [either] before completing a sentence of imprisonment with respect to the offense giving rise to the registration requirement; or [for those not sentenced to prison] not later than 3 business days after being sentenced . . . .
>
> "**(c) Keeping the registration current**
> "A sex offender shall [update his registration within] 3 business days after each change of name, residence, employment, or student status [by] appear[ing] in person in at least 1 jurisdiction involved . . . and inform[ing] that jurisdiction of all [relevant] changes . . . .
>
> "**(d) Initial registration of sex offenders unable to comply with subsection (b)**
> "*The Attorney General shall have the authority to specify the applicability* of the [registration] requirements . . . to sex offenders convicted before the enactment of this chapter or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b)." 42 U. S. C. §16913 (emphasis added).

The new Act became law on July 27, 2006.

On February 28, 2007, the Attorney General promulgated an Interim Rule specifying that "[t]he requirements of [the Act] apply to all sex offenders, including sex offenders convicted of the offense for which registration is required prior to the enactment of that Act." 72 Fed. Reg. 8897 (codified at 28 CFR §72.3). Subsequently, the Attorney General promulgated further rules, regulations, and specifications. See 73 Fed. Reg. 38030 (2008); 75 Fed. Reg. 81849 (2010); 76 Fed. Reg. 1630 (2011). The present case focuses upon the applicability of the Act's registration requirements to pre-Act offenders during the period between (1) July 27, 2006 (when the Act took effect) and (2) the moment when the Attorney General promulgated a valid rule specifying the registration requirements' applicability, namely, February 28, 2007 (or a later date if the February 28 specification was invalid).

B

Billy Joe Reynolds, the petitioner, is a pre-Act offender. He was convicted of a Missouri sex offense in October 2001; he served four years in prison; he was released in July 2005; he then registered as a Missouri sex offender; but he moved to Pennsylvania in September 2007 without updating his Missouri registration information (as Missouri law required) and without registering in Pennsylvania. A federal grand jury indicted him, charging him with, between September 16 and October 16, 2007, having "knowingly failed to register and update a registration as required by [the Act]." App. 13; see 18 U. S. C. §2250(a). In the Government's view, Reynolds' failure to update his address information when he moved to Pennsylvania violated the requirement that a "sex offender" update registration information within "3 business days after each change of . . . residence." 42 U. S. C. §16913(c).

Reynolds moved to dismiss the indictment on the

ground that in September and October 2007 the Act's registration requirements had not yet become applicable to pre-Act offenders. He conceded that the Act had become law earlier (namely, in July 2006), and he conceded that the Attorney General had already (in February 2007) promulgated an Interim Rule specifying that the Act's registration requirements were applicable to pre-Act offenders. But he claimed that the Interim Rule was invalid because it violated both the Constitution's "nondelegation" doctrine and the Administrative Procedure Act's (APA) requirement for "good cause" to promulgate a rule without "notice and comment" (as the Attorney General had done). See *A. L. A. Schechter Poultry Corp.* v. *United States*, 295 U. S. 495, 529 (1935) (nondelegation doctrine); 5 U. S. C. §§553(b)(3)(B), (d)(3) (APA). Because the Interim Rule is invalid, he added, the law must treat him like a pre-Act offender who traveled interstate and violated the Act's registration requirements *before* the Attorney General specified their applicability.

The District Court rejected on the merits Reynolds' legal attack on the Interim Rule. But the Court of Appeals rejected Reynolds' argument without reaching those merits. 380 Fed. Appx. 125 (2010). That court thought that the Act's registration requirements apply to pre-Act offenders such as Reynolds (who was subject to a pre-existing state-law registration requirement) from the date of the new law's enactment—even in the absence of any rule or regulation by the Attorney General specifying that the new registration requirements apply. That being so, the validity of the Interim Rule could make no legal difference, for the Act required Reynolds to follow the new federal registration requirements regardless of any rulemaking.

The Courts of Appeals have reached different conclusions about whether the Act's registration requirements apply to pre-Act offenders prior to the time that the Attor-

ney General specifies their applicability, *i.e.*, from July 2006 until at least February 2007. Six Circuits have held that the Act's registration requirements do not apply to pre-Act offenders unless and until the Attorney General so specifies. *United States* v. *Johnson*, 632 F. 3d 912, 922–927 (CA5 2011); *United States* v. *Valverde*, 628 F. 3d 1159, 1162–1164 (CA9 2010); *United States* v. *Cain*, 583 F. 3d 408, 414–419 (CA6 2009); *United States* v. *Hatcher*, 560 F. 3d 222, 226–229 (CA4 2009); *United States* v. *Dixon*, 551 F. 3d 578, 585 (CA7 2008); *United States* v. *Madera*, 528 F. 3d 852, 856–859 (CA11 2008) *(per curiam)*. Five Circuits have held that they apply from the date of the Act's enactment, and prior to any such specification, at least with respect to pre-Act offenders who had already registered under state law. *United States* v. *Fuller*, 627 F. 3d 499, 506 (CA2 2010); *United States* v. *DiTomasso*, 621 F. 3d 17, 24 (CA1 2010); *United States* v. *Shenandoah*, 595 F. 3d 151, 163 (CA3 2010); *United States* v. *Hinckley*, 550 F. 3d 926, 932 (CA10 2008); *United States* v. *May*, 535 F. 3d 912, 918–919 (CA8 2008). In light of this split, we agreed to consider the question.

## II

### A

The question before us is whether the Act requires pre-Act offenders to register before the Attorney General validly specifies that the Act's registration provisions apply to them. We believe that it does not. For one thing, a natural reading of the textual language supports our conclusion. The text consists of four statements. See *supra,* at 3. *Statement One* says that "[a] sex offender shall register, and keep the registration current." *Statement Two* says that a sex offender must initially register before completing his "sentence of imprisonment" (or, if the sentence does not involve imprisonment, within three days of conviction). *Statement Three* says that the sex

offender must update a registration within three business days of any change of "name, residence, employment, or student status." *Statement Four* says that "[t]he Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before the enactment of this chapter."

Read naturally, the *Fourth Statement* modifies the *First*. It specifically deals with a subset (pre-Act offenders) of a broad general class (all sex offenders) to which the *First Statement* applies. And it therefore should control the Act's application to that subset. See *Gozlon-Peretz* v. *United States*, 498 U. S. 395, 407 (1991) (specific statutory provision normally controls over one of more general application); see also *Bloate* v. *United States*, 559 U. S. \_\_\_, \_\_\_ (2010) (slip op., at 10) (same).

At the same time, the *Fourth Statement* says that the Attorney General has authority to specify the Act's "applicability," not its "nonapplicability." And it consequently is more naturally read as conferring the authority to *apply* the Act, not the authority to make exceptions. That is how we normally understand a term such as "authority to specify" in the context of applying new rules to persons already governed by pre-existing rules. If, for example, the Major League Baseball Players Association and the team owners agreed that the Commissioner of Baseball "shall have the authority to specify the applicability" to the major leagues of the more stringent minor league drug testing policy, we should think that the minor league policy would not apply unless and until the Commissioner so specified.

For another thing, this reading of the Act efficiently resolves what Congress may well have thought were practical problems arising when the Act sought to apply the new registration requirements to pre-Act offenders. The problems arise out of the fact that the Act seeks to make more uniform a patchwork of pre-existing state systems.

Doing so could require newly registering or re-registering "a large number" of pre-Act offenders. That effort could prove expensive. And it might not prove feasible to do so immediately. See 73 Fed. Reg. 38063 (recognizing these problems). Congress' concern about these problems is reflected in the Act's providing the States with three years to bring their systems into compliance with federal standards while permitting the Attorney General to extend that 3-year grace period to five years. 42 U. S. C. §16924.

These same considerations might have warranted different federal registration treatment of different categories of pre-Act offenders. Cf. 73 Fed. Reg. 38035–38036, and 38046–38047 (final Department of Justice guidelines allowing States to meet Act requirements without registering certain categories of pre-Act offenders); 76 Fed. Reg. 1635–1636 (supplemental guidelines allowing the same). At least Congress might well have so thought. And consequently, Congress might well have looked for a solution. Asking the Department of Justice, charged with responsibility for implementation, to examine these pre-Act offender problems and to apply the new registration requirements accordingly could have represented one efficient and desirable solution (though we express no view on Reynolds' related constitutional claim). Cf. 42 U. S. C. §§16912(b), 16914(a)(7), (b)(7), 16919, 16941, 16945 (granting the Attorney General authority to administer various aspects of the Act). And that is just the solution that the Act's language says that Congress adopted.

Finally, our reading of the Act takes Congress to have filled potential lacunae (created by related Act provisions) in a manner consistent with basic background principles of criminal law. The *Second Statement*, for example, says that a sex offender must register before completing his prison term, but the provision says nothing about when a pre-Act offender who completed his prison term pre-Act must register. Although a state pre-Act offender could not

be prosecuted until he traveled interstate, there is no interstate requirement for a federal pre-Act offender. And to apply the Act to either of these pre-Act offenders from the date of enactment would require reading into the statute, silent on the point, some kind of unsaid equivalent (*e.g.,* registering or updating within a "reasonable time" or "within three days of first post-Act travel in interstate commerce" or "as preexisting state law requires").

Pre-Act offenders, aware of such complexities, lacunae, and difficulties, might, on their own, reach different conclusions about whether, or how, the new registration requirements applied to them. A ruling from the Attorney General, however, could diminish or eliminate those uncertainties, thereby helping to eliminate the very kind of vagueness and uncertainty that criminal law must seek to avoid. Cf., *e.g., United States* v. *Lanier*, 520 U. S. 259, 266 (1997) (noting that "the canon of strict construction of criminal statutes, or rule of lenity, ensures fair warning by so resolving ambiguity in a criminal statute as to apply it only to conduct clearly covered").

## B

The Government makes three principal arguments to the contrary. First, it says that our interpretation of the Act conflicts with one basic statutory purpose, namely, the "establish[ment of] a comprehensive national system for the registration of [sex] offenders," 42 U. S. C. §16901, that *includes* offenders who committed their offenses before the Act became law. The Act reflects that purpose when it defines "sex offender" broadly to include any "individual who was convicted of a sex offense." §16911(1). And we have recognized that purpose in stating that, in general, the Act's criminal provisions apply to any pre-Act offender required to register under the Act who later travels interstate and fails to register. See *Carr,* 560 U. S., at ___ (slip op., at 7).

The Act's history also reveals that many of its supporters placed considerable importance upon the registration of pre-Act offenders. See, *e.g.,* H. R. Rep. No. 109–218, pt. 1, p. 24 (2005) (H. R. Rep.) ("[Twenty] percent of sexual offenders are 'lost,' and there is a strong public interest in finding them and having them register with current information to mitigate the risks of additional crimes against children"); 152 Cong. Rec. 15333 (2006) (statement of Sen. Cantwell) ("Child sex offenders have exploited this stunning lack of uniformity, and the consequences have been tragic. Twenty percent of the Nation's 560,000 sex offenders are 'lost' because State offender registry programs are not coordinated well enough"); *id.,* at 15338 (statement of Sen. Kyl) ("There currently are over 100,000 sex offenders in this country who are required to register but are 'off the system.' They are not registered. The penalties in this bill should be adequate to ensure that these individuals register"); *id.,* at 13050 (statement of Sen. Frist) ("There are currently 550,000 registered sex offenders in the U. S. and at least 100,000 of them are missing from the system. Every day that we don't have this national sex offender registry, these missing sex predators are out there somewhere").

The difficulty with the Government's argument, however, is that it overstates the need for *instantaneous* registration of pre-Act offenders. Our different reading, we concede, involves implementation delay. But that delay need not be long (the Attorney General issued his Interim Rule 217 days after the effective date of the new law). And that delay can be justified by the need to accommodate other Act-related interests. See *supra,* at 7–9.

Second, the Government suggests that our reading leads to an absurd result. As it points out, the *Fourth Statement* grants the Attorney General the "authority to specify" the registration requirements' applicability not only to pre-Act offenders but also to those convicted prior to the

"implementation" of the new Act "in a particular jurisdiction." Some jurisdictions might not implement the Act for up to five years. See 42 U. S. C. §16924; see also Dept. of Justice, Office of Justice Programs, Justice Department Finds 24 Jurisdictions Have Substantially Implemented SORNA Requirements (July 28, 2011) (stating that as of July 28, 2011, 14 States had implemented the Act's requirements), http://www.ojp.usdoj.gov/newsroom/pressreleases/2011/SMART_PR-072811.htm (all Internet materials as visited Jan. 19, 2012, and available in Clerk of Court's case file). Yet, the Government concludes, it is absurd to believe that Congress would have desired so long a delay in the application of its new registration requirements.

The problem with this argument, however, is that reading the two categories similarly (a matter which we need not decide) would not require a long delay in applying the registration requirements to post-Act offenders who committed a crime in a jurisdiction that is slow to implement the new requirements. At most, that reading would require the Attorney General to promulgate a rule applicable to all preimplementation offenders. That rule could specify that the Act's preregistration provisions apply to some or to all those offenders. And it could do so quickly, well before a jurisdiction implements the Act's requirements. Indeed, the Attorney General's Interim Rule and the Department of Justice's final guidelines, both issued before any jurisdiction implemented the Act's requirements, state that the Act's requirements apply to "all sex offenders," including all preimplementation offenders. See 72 Fed. Reg. 8897 (codified at 28 CFR §72.3); 73 Fed. Reg. 38036; cf. Dept. of Justice, Office of Justice Programs, Justice Department Announces First Two Jurisdictions to Implement Sex Offender Registration and Notification Act (Sept. 23, 2009), http://www.ojp.usdoj.gov/newsroom/pressreleases/2009/SMART09154.htm.

Third, the Government argues against our interpretation on the ground that the Act says only that the Attorney General "shall have *the authority* to specify the applicability" of the Act's registration requirements to pre-Act offenders; it does not say that he "*shall* specify" or otherwise *require* him to do so. The Act's language, the Government continues, consequently gives the Attorney General the power *not* to specify anything; that power is inconsistent with Congress' intent to ensure the speedy registration of thousands of "lost" pre-Act offenders, *supra,* at 10; and we can avoid this result only by reading the Act's registration requirements as applying immediately and on their own to all pre-Act offenders (though the Attorney General would have the power to make exceptions).

This argument bases too much upon too little. There is no reason to believe that Congress feared that the Attorney General would refuse to apply the new requirements to pre-Act offenders. See, *e.g.,* H. R. Rep., at 23–24; Protecting Our Nation's Children from Sexual Predators and Violent Criminals: What Needs To Be Done? Hearing before the Subcommittee on Crime, Terrorism, and Homeland Security of the House Committee on the Judiciary, 109th Cong., 1st Sess., 4–13 (2005); Office of the Press Sec'y, The White House, President Signs H. R. 4472, the Adam Walsh Child Protection and Safety Act of 2006 (July 27, 2006), http://georgewbush-whitehouse.archives.gov/news/releases/2006/07/20060727-6.html. And there was no need for a mandatory requirement to avoid that unrealistic possibility. There is consequently no need to read the language unnaturally as giving the Attorney General the authority only to make exceptions from an implicit (unstated) rule that would otherwise apply the new registration requirements to all pre-Act offenders across the board and immediately.

Finally, we note that some lower courts have read the

Attorney General's specification authority as applying only to those pre-Act sex offenders unable to comply with the statute's "initial registration" requirements. See 42 U. S. C. §16913(b). That, however, is not what the statute says. Rather, its *Fourth Statement*, §16913(d), says that the Attorney General has the authority (1) to specify the applicability of the registration requirements to pre-Act (and preimplementation) offenders, "*and*" (2) to prescribe rules for their registration, "*and*" (3) to prescribe registration rules for other categories of sex offenders who are unable to comply with the initial registration requirements. See *supra*, at 3. The word "and" means that the Attorney General's authority extends beyond those pre-Act "sex offenders who are unable to comply" with the initial registration requirements.

## III

For these reasons, we conclude that the Act's registration requirements do not apply to pre-Act offenders until the Attorney General so specifies. Whether the Attorney General's Interim Rule sets forth a valid specification consequently matters in the case before us. And we reverse the Third Circuit's judgment to the contrary. We remand the case for further proceedings consistent with this opinion.

*So ordered.*

## APPENDIX

18 U. S. C. §2250(a)

"IN GENERAL.—Whoever—

"(1) is required to register under the Sex Offender Registration and Notification Act;

"(2)(A) is a sex offender as defined for the purposes of the Sex Offender Registration and Notification Act by reason of a conviction under Federal law (including the Uniform Code of Military Justice), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States; or

"(B) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and

"(3) knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act;

"shall be fined under this title or imprisoned not more than 10 years, or both."


42 U. S. C. §16913

"**Registry requirements for sex offenders**

"**(a) In general**

"A sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student. For initial registration purposes only, a sex offender shall also register in the jurisdiction in which convicted if such jurisdiction is different from the jurisdiction of residence.

"**(b) Initial registration**

"The sex offender shall initially register—(1) before completing a sentence of imprisonment with respect to

Appendix to opinion of the Court

the offense giving rise to the registration requirement; or (2) not later than 3 business days after being sentenced for that offense, if the sex offender is not sentenced to a term of imprisonment.

"**(c) Keeping the registration current**

"A sex offender shall, not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved pursuant to subsection (a) and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry. That jurisdiction shall immediately provide that information to all other jurisdictions in which the offender is required to register.

"**(d) Initial registration of sex offenders unable to comply with subsection (b)**

"The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before the enactment of this chapter or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b).

"**(e) State penalty for failure to comply**

"Each jurisdiction, other than a Federally recognized Indian tribe, shall provide a criminal penalty that includes a maximum term of imprisonment that is greater than 1 year for the failure of a sex offender to comply with the requirements of this subchapter."

# SUPREME COURT OF THE UNITED STATES

No. 10–6549

BILLY JOE REYNOLDS, PETITIONER *v.* UNITED
STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE THIRD CIRCUIT

[January 23, 2012]

JUSTICE SCALIA, with whom JUSTICE GINSBURG joins,
dissenting.

In my view, the registration requirements of the Sex
Offender Registration and Notification Act (Act), 120 Stat.
590, 42 U. S. C. §16901 *et seq.* (2006 ed. and Supp. III),
apply of their own force, without action by the Attorney
General. The Act's statement that "[t]he Attorney General
shall have the authority to specify the applicability of
the [registration] requirements" to pre-Act sex offenders,
§16913(d), is best understood as conferring on the Attor-
ney General an authority to make exceptions to the oth-
erwise applicable registration requirements.

To begin with, I do not share the Court's belief that
to "specify the applicability" more naturally means, in the
present context, to "make applicable" rather than to "make
inapplicable." See *ante*, at 7. The example the Court
gives, the Commissioner of Baseball's "'authority to spec-
ify the applicability'" of more stringent minor-league drug
testing policies to the major leagues, *ibid.,* is entirely
inapt, because it deals with a policy that on its face is
otherwise not applicable. Since the major leagues are not
covered by the policies, the Commissioner's "'authority to
specify [their] applicability'" *can mean nothing else* but the
authority to render them applicable. What we have here,
however, is a statute that states in unqualified terms that

"a sex offender shall register," §16913(a)—and that the Court rightly believes was meant to cover pre-Act offenders.*    The issue is whether "specify the applicability" means that no pre-Act offenders need register unless the Attorney General says so, or rather that the Attorney General may excuse the unqualified requirement for pre-Act offenders.  In *that* context, it seems to me that the latter meaning is more natural.  One specifies the applicability of an application that already exists by describing or revising its contours.

I think it preferable to give "specify" this meaning not only because here it is more natural, but also because the alternative is to read the statute as leaving it up to the Attorney General whether the registration requirement would *ever* apply to pre-Act offenders, even though registration of pre-Act offenders was (as the Court acknowledges) what the statute sought to achieve.  For the statute does not *instruct* the Attorney General to specify; it merely gives him "authority" to do so.  In this respect, the provision at issue here stands in marked contrast to other provisions of the Act which clearly impose duties on the Attorney General.  See, *e.g.,* §16912(b) ("The Attorney General shall issue guidelines and regulations to interpret and implement this subchapter"); §16917(b) ("The Attorney General shall prescribe rules for the notification of [certain] sex offenders"); §16919(a) ("The Attorney General shall maintain a national database"); §16926(a) ("The Attorney General shall establish and implement a Sex Offender Management Assistance program").

_____

*The Court reaches this conclusion based on an inquiry into legislative history.  See *ante*, at 9–10.  That inquiry is quite superfluous, however since the text of the Act itself makes clear that Congress sought to "establis[h] a comprehensive national system for the registration of [sex offenders]," 42 U. S. C. §16901, with "sex offender" defined broadly to "mea[n] an individual who *was* convicted of a sex offense," §16911(1) (emphasis added).

The Court's response to this—that "there was no need for a mandatory requirement to avoid [the] unrealistic possibility" that the Attorney General would not specify, *ante*, at 12—seems to me a fine answer to the question "What mandatory requirements must a poorly drafted statute contain in order to be workable?"  It is an inadequate answer, however, to the question that is relevant here: "Would Congress have written the provision this way if it wanted pre-Act offenders covered and did not think they were covered absent specification by the Attorney General?"  Intelligently drafted statutes make mandatory those executive acts essential to their functioning, *whether or not* those acts would likely occur anyway.  It would have taken little effort (in fact, less effort) for Congress to write "the Attorney General shall specify the applicability" instead of "the Attorney General shall have authority to specify the applicability."  The latter formulation confers discretion, and it is simply implausible that the Attorney General was given discretion to determine whether coverage of pre-Act offenders (one of the purposes of the Act) should exist.

Indeed, it is not entirely clear to me that Congress can constitutionally leave it to the Attorney General to decide—with no statutory standard whatever governing his discretion—whether a criminal statute will or will not apply to certain individuals.  That seems to me sailing close to the wind with regard to the principle that legislative powers are nondelegable, see *Whitman* v. *American Trucking Assns., Inc.*, 531 U. S. 457, 472–476 (2001); *Loving* v. *United States*, 517 U. S. 748, 776–777 (1996) (SCALIA, J., concurring in part and concurring in judgment), and "[i]t is our settled policy to avoid an interpretation of a federal statute that engenders constitutional issues if a reasonable alternative interpretation poses no constitutional question." *Gomez* v. *United States*, 490 U. S. 858, 864 (1989).  Construing the Act to give the

Attorney General the power to *reduce* congressionally imposed requirements fits that bill, because such a power is little more than a formalized version of the time-honored practice of prosecutorial discretion.

The Court points out that there might have been need for "different federal registration treatment of different categories of pre-Act offenders," *ante*, at 8, and that absent a "ruling from the Attorney General" pre-Act offenders would be uncertain "about whether, or how, the new registration requirements applied to them," *ante*, at 9. But attending to those details would certainly come within the Attorney General's authority to "specify" application of the Act—and so would the temporary suspension of registration requirements pending the Attorney General's resolution of those details. And of course the uncertainty of where to register could form the basis for the Attorney General's exercise of his discretion not to prosecute in individual cases. Neither problem, it seems to me, justifies the extraordinary interpretation that this Act does not apply to pre-Act offenders unless and until the Attorney General, in his discretion, says so.

For these reasons, I respectfully dissent.