*1138 MILLETT, Circuit Judge,
concurring in part, dissenting in part, and dissenting from the judgment:
I join in full that portion of the opinion holding that the Attorney General lacked good cause to forgo notice and comment when issuing the Interim Rule, particularly given that he waited 217 days after the Sex Offender Registration and Notification Act (“SORNA”), 42 U.S.C. § 16901 et seq., took effect to put that rule out. See Applicability of the Sex Offender Registration and Notification Act, 72 Fed. Reg. 8894-01 (Feb. 28, 2007) (codified at 28 C.F.R. pt. 72). I also agree that the error does not meet our high standard for harmlessness in this particular Administrative Procedure Act context. I accordingly agree that the Attorney General’s Interim Rule did not lawfully “specify” how the provisions of SORNA apply to offenders like appellant Anthony Ross, whose offense preceded that law’s enactment.
That is where my agreement with the majority opinion ends. Unlike the majority opinion, I would join every other circuit that has addressed the question and hold that the Attorney General’s Final Guidelines adequately specified how and when SORNA would apply to pre-Act offenders, see The National Guidelines for Sex Offender Registration and Notification, 73 Fed. Reg. 38030 (July 2, 2008). See also United States v. Manning, 786 F.3d 684, 686-687 (8th Cir. 2015); United States v. Newton, 74 M.J. 69, 75 (C.A.A.F. 2015); United States v. Lott, 750 F.3d 214, 217-221 (2d Cir. 2014); United States v. Whitlow, 714 F.3d 41, 45-47 (1st Cir. 2013); United States v. Stevenson, 676 F.3d 557, 562-566 (6th Cir. 2012); United States v. Valverde, 628 F.3d 1159, 1160, 1163 (9th Cir. 2010).
In my view, the Final Guidelines suffice because they (i) explicitly announce SOR-NA’s retroactive application, (ii) afford affected individuals clear notice of their retroactive registration obligations, (iii) spell out in detail how and when retroactivity will operate across divergent state systems, (iv) limit the requirements for participating jurisdictions to register pre-Act offenders in specific circumstances determined by the Attorney General, and (v) express the Attorney General’s independent response to and judgment about comments advocating against retroactivity. Any way you look at it, that constitutes “specifying” SORNA’s retroactive reach. I accordingly would affirm the judgment of conviction in this ease.
A
Congress was explicit that SORNA is meant to apply retroactively to pre-Act offenders. The Act defines a “sex offender” as “an individual who was convicted of a sex offense,” 42 U.S.C. § 16911(1) (emphasis added), and thus “defines the term ‘sex offender’ as including these pre-Act offenders.” Reynolds v. United States, 565 U.S. 432, 132 S.Ct. 975, 978, 181 L.Ed.2d 935 (2012) (quoting 42 U.S.C. § 16911(1)). And the general obligation to register applies to all such “sex offender[s].” 42 U.S.C. § 16913(a)(3); id. § 16917(a) & (b) (directing the Attorney General to “prescribe rules for the notification of sex offenders” who have already been sentenced or released from custody concerning their duty to register).
Indeed, the statute’s avowed purpose is to establish “a comprehensive national system for the registration of [sex] offenders[.]” 42 U.S.C. § 16901 (emphasis added). The Supreme Court has “recognized that purpose,” emphasizing that, “in general, the Act’s criminal provisions apply to any pre-Act offender required to register under the Act who later travels interstate and fails to register.” Reynolds, 132 S.Ct. at 982 (citing Carr v. United States, 560 U.S. 438, 445-448, 130 S.Ct. 2229, 176 *1139 L.Ed.2d 1152 (2010)); see id. (“The Act’s history also reveals that many of its supporters placed considerable importance upon the registration ■ of pre-Act offenders.”) (citations omitted); see also id. at 986 (Scalia, J., dissenting) (“[Registration of pre-Act offenders was (as the Court acknowledges) what the statute sought to achieve.”). If that were not clear enough, Congress announced with moving specificity its desire to protect the public from those past offenders who had sexually assaulted seventeen victims identified by name in the Act, such as Jacob Wetterling, Elizabeth Smart, Megan Kanka, Amie Zyla, and Pam Lychner. 42 U.S.C. § 16901.[1]
However, Congress also recognized that retroactive implementation of SORNA’s registration requirements was easier said than done, and thus that the Act could not practicably be retroactive immediately upon enactment. Indeed, the Supreme Court confirmed in Reynolds that Congress did not intend for SORNA to be instantaneously retroactive of its own force. Reynolds, 132 S.Ct. at 978, 983-984. Congress, though, did intend for SORNA to be eventually retroactive to the extent the Attorney General determined was “feasible,” Reynolds, 132 S.Ct. at 981. See id. at 983 (rejecting “instantaneous registration” of pre-Act offenders, in favor of “implementation delay” while the Attorney General specified the timing and scope of retroactive operation); id. at 981 (noting Congress’s recognition that “it might not prove feasible to” make SORNA retroactive “immediately”). Accordingly, SORNA tasked the Attorney General with (i) determining when, how, and to what extent SORNA’s requirements could practicably be applied retroactively, and then (ii) putting into effect Congress’s judgment that SORNA should apply to pre-enactment offenders where possible.
Delegating that job to the Attorney General made sense. SORNA’s goal, after all, was to replace a patchwork of state and federal registration systems with uniform registration requirements and to enforce through federal criminal law* the registration obligations of federal sex offenders and non-federal sex offenders who move across state lines. See Reynolds, 132 S.Ct. at 978. Recognizing the complexities that participating jurisdictions would confront in bringing their systems into conformity with new national standards, Congress afforded the participating jurisdictions a three-year timeframe (extendable by the Attorney General to five years) to bring their systems into compliance. 42 U.S.C. § 16924; see also SORNA Extensions Granted, U.S. Dep’t of Justice (Aug. 8, 2010) (the Attorney General granted extensions to 47 States, 7 territories, and 184 tribes), http://ojp.gov/smarVpdfs/SORNA_ Extensions_Granted.pdf (last accessed Feb. 15, 2017).[2]
Given that state- and federal-law conglomeration and the inevitably varying dates by which jurisdictions would be able to conform their registration systems with SORNA, Congress tasked the Attorney *1140 General with resolving the “complexities, lacunae, and difficulties” pertaining to “whether, or how, the new registration requirements applied” to pre-Act offenders. Reynolds, 132 S.Ct. at 982. Congress, in other words, charged the Attorney General with making the rubber meet the road: the Attorney General had to figure out how and when SORNA’s retroactivity purpose could realistically be put into effect while navigating a labyrinth of differing and evolving registration systems spanning dozens of jurisdictions and implicating multiple and varying categories of past offenders. That assignment to the Attorney General “efficiently resolve[d] what Congress may well have thought were practical problems arising when the Act sought to apply the new registration requirements to pre-Act offenders[,]” given the need “to make more uniform a patchwork of pre-existing state systems” and to “newly register[] or re-register[ ■] a large number of pre-Act offenders.” See Reynolds, 132 S.Ct. at 981 (internal quotation marks omitted).
The Attorney General’s assignment also comported with SORNA’s statutory design as a program of cooperative federalism. In the Act, Congress encouraged States, backed up by the offer of federal funding, to bring their own registration systems up to federally identified standards and to integrate their systems into a uniform national program that Congress concluded would more effectively monitor sex offenders once released. As a consequence of that statutory structure, attaining retroactive registration is heavily dependent on the type of records and registration obligations that each State has in place. That, in fact, is why SORNA’s criminal prohibition for non-federal offenders like Ross is defined in terms of a knowing failure to register under a state system. See 18 U.S.C. § 2250(a) (making it a crime to “knowingly fail[] to register or update a registration” within a state system); 42 U.S.C. § 16913(a) (“A sex offender shall register, and keep the registration-current, in each jurisdiction where the offender resides[.]”).
While SORNA thus gives the Attorney General latitude to configure the statute’s intended retroactive reach, the Reynolds Court was unanimous in concluding that the Attorney General’s specification judgments were to be ones of timing, scope, and logistical implementation: it would be entirely “unrealistic,” the Court held, for the Attorney General to make a policy call against retroactive operation or to otherwise “refuse to apply the new requirements to pre-Act offenders” given the statute’s explicitly retroactive text. Reynolds, 132 S.Ct. at 984; see id. at 986 (Scalia, J., dissenting) (“[I]t is simply implausible that the Attorney General was given discretion to determine whether coverage of pre-Act offenders (one of the purposes of the Act) should exist.”).
To be clear, describing the Attorney General’s job as one of timing, scope, and logistical implementation is not meant to understate the import of that assignment. As Reynolds held, Congress’s delegation to the Attorney General meant that SOR-NA’s registration requirements could not be applied to pre-Act offenders at all “until the Attorney General so specifies.” 132 S.Ct. at 984. But in deciding whether the Attorney General has fulfilled that specification task, it is critical to remember that (i) the Attorney General was not charged with making a broad or categorical policy judgment about whether or not the statute should apply to pre-Act offenders; (ii) the range of his judgment in implementing the statute was at all times hemmed in by the statute’s background directive that the registration obligation was designed to apply to pre-Act offenders eventually to the extent feasible; and (iii) the heart of retroactive operation — the establishment of reg *1141 istration processes with which past offenders would be expected to comply — largely had to take effect within the dozens of state and local registration systems with whom the Attorney General was coordinating.[3]
B
In my view, the Final Guidelines accomplish that distinct task of “specify[ing]” when and how SORNA applies to which pre-Act offenders through more than fifty state and local registration systems.
First, as the Supreme Court has already observed, the Final Guidelines themselves — separate and apart from the statute — say explicitly that “the Act’s requirements apply to ‘all sex offenders,’ including all preimplementation offenders.” Reynolds, 132 S.Ct. at 983 (quoting 73 Fed. Reg. at 38036) (citation omitted). The Final Guidelines thus provide clear notice of the Attorney General’s intended retroactivity for pre-Act offenders.
Second, the Attorney General made the independent decision in the Final Guidelines to narrow the States’ obligations to register certain categories of pre-enactment offenders, stating that, “[w]hile SORNA’s requirements apply to all sex offenders, regardless of when they were convicted,” States could choose to forgo registering those sex offenders “who have fully left the system and merged into the general population at the time the jurisdiction implements SORNA, if they do not reoffend,” without having their federal funding reduced. 73 Fed. Reg.- at 38036. The Attorney General also determined that a State could, consistently with SOR-NA, “credit a sex offender with a pre-SORNA conviction with the time elapsed from his release (or the time elapsed from sentencing, in case of a nonincarcerative sentence) in determining what, if any, remaining registration time is required.” Id. Consequently, “[i]n such cases, a jurisdiction * * * does not have to require the sex offender to register on the basis of the conviction, even if the criteria for retroactive application of the SORNA standards * * * are otherwise satisfied.” Id. at 38047.
By narrowing the States’ requirements to register pre-Act offenders, the Attorney General expressly acknowledged that “specific provisions of the guidelines relating to ‘retroactivity’ incorporate some features that may limit their effect on sex offenders with older convictions.” 73 Fed. Reg. at 38036. In so doing, the Attorney General identified — that is, specified — the potential implications of his decisions with respect to retroactive coverage for pre-Act offenders. See 73 Fed. Reg. at 38036; id. (noting that, to the extent jurisdictions choose to incorporate the exceptions, “the effect of retroactive application on sex offenders with pre-SORNA convictions may be further reduced”). And doing so made sense. For a *1142 sex offender only violates SORNA if he or she “knowingly” fails to register within a designated jurisdiction. 18 U.S.C. § 2250(a); see 42 U.S.C. § 16913(a). For non-federal offenders like Ross, SORNA tasks the States with identifying such sex offenders, notifying them of their obligation to register, and obtaining written acknowledgment that such sex offenders understand their obligations. 42 U.S.C. § 16917(a); 73 Fed. Reg. at 38063-38064. Accordingly, if a jurisdiction is not obliged to and chooses not to identify, notify, or register those pre-Act offenders, any federal prosecution of such pre-Act offenders would risk foundering upon the “knowing” element of the offense, and perhaps also on SORNA’s affirmative defense for offenders for whom registration was infeasible due to circumstances beyond their control, 18 U.S.C. § 2250(c). See also Kennedy v. Allera, 612 F.3d 261, 269 (4th Cir. 2010) (“Indeed, the criminal provisions of SOR-NA also recognize that a State can refuse registration inasmuch as they allow, as an affirmative defense to a prosecution, the claim that ‘uncontrollable circumstances prevented the individual from complying.’ ”) (citation omitted).[4]
The majority opinion highlights convictions for failing to register prior to a jurisdiction’s implementation of SORNA in which SORNA’s mens rea requirement nevertheless was met. Op. 1136. I do not disagree with the view that a sex offender’s duty to register and a jurisdiction’s implementation of SORNA are not always coextensive. But whether sex offenders generally have a legal duty to register prior to SORNA’s implementation in a particular jurisdiction is of little relevance to the inquiry into whether the Attorney General, while making explicit the general retroactive reach of SORNA to pre-Act offenders in the Final Guidelines, also intended to specify potential limitations on those retroactive consequences. The Attorney General plainly stated that his Guidelines “may limit their effect” on certain pre-Act offenders. 73 Fed. Reg. at 38036.1 take the Attorney General to have meant what he said. After all, as the majority opinion correctly notes, “the issue here is what the Attorney General said he was doing[.]” Op. 1137.
C
In holding that no valid specification occurred, the majority opinion relies on Prill v. NLRB, 755 F.2d 941 (D.C. Cir. 1985), which held that an agency commits reversible error when it deems mandated by law a decision over which it actually has discretion, id. at 948. The majority opinion reasons that the Attorney General mistakenly “disclaimed any authority to decide for himself whether SORNA applied to pre-enactment offenders.” Op. 1134.
But the Attorney General was certainly correct that Congress itself had decided that SORNA should be retroactively applicable to pre-enactment offenders to the extent feasible. See Reynolds, 132 S.Ct. at 984. That is why the Supreme Court in Reynolds backhanded the suggestion that the Attorney General had the discretion to “refuse to apply the new requirements to pre-Act offenders.” Id. The Supreme Court, in fact, labeled an “unrealistic possibility,” id. the very retroactivity judgment that the. majority opinion faults the Final Guidelines for not making.
*1143 The Attorney General’s assignment instead was, in the statute’s words, to “specify” — to state precisely or in detail — when, how, and for whom such retroactivity could eventually and practicably be accomplished across dozens of different registration systems. Indeed, Congress’s selection of the verb “specify” — rather than something more empowering like “decide” or “determine” — underscores that the Attorney General’s task was one of figuring out and then explaining how and when to make retroactivity work to the extent possible. After all, to specify means simply to “tell or state precisely or in detail.” Webster’s Third New International Dictionary 2187 (2002). By its plain meaning, “specify” does not charge the Attorney General with undertaking in the first instance an overarching policy call about whether SORNA should or should not apply to pre-Act offenders.[5]
The Attorney General plainly recognized his authority in that specific respect. The “guidelines require the application by a jurisdiction of SORNA’s requirements to sex offenders convicted prior to the enactment of SORNA or its implementation in the jurisdiction!.]” 78 Fed. Reg. at 38035 (emphasis added). That clear and explicit statement put pre-SORNA offenders on plain notice of their retroactive duty to register on pain of criminal penalty. See Reynolds, 132 S.Ct. at 983. .In addition, the Final Guidelines provide that SORNA does not require States to register past offenders who had already left the state registration system or those for whom sufficient time had already been credited by the State. 73 Fed. Reg. at 38036, 38047. Nothing in SORNA commanded those precise exceptions; the Attorney General independently made that judgment and laid it out in the Final Guidelines, and acknowledged the practical effect doing so could have on the pre-Act offenders themselves. Id. at 38036.
On top of that, the Attorney General invited and then specifically addressed public comments on retroactivity, independently rejecting the argument that retroactive application “adversely affectfs] sex offenders!.]” 73 Fed. Reg. at 38035. The Attorney General explained his view that “the effects of SORNA’s registration and notification requirements on sex offenders are much the same regardless of whether their sex offense convictions occurred before or after SORNA’s enactment or its implementation in a particular jurisdiction!,]” and that “the public safety concerns presented by sex offenders are much the same, regardless of when they were convicted.” Id. at 38035-38036.
Further, after acknowledging the overarching “legislative judgment” that the burdens of registration and notification requirements “are justified by the resulting benefits in promoting public safety!,]” the Attorney General added that “in any event” his “objective [was] to ‘interpret and implement’ SORNA’s standards, see SORNA § 112(b), not to second-guess the legislative policies they embody.” 73 Fed. Reg. at 38036. The Attorney General’s use of the phrase “in any event” marries together his just-articulated independent judgment about the public-safety need for retroactive operation with Congress’s background retroactivity “policies.” Indeed, the very next sentence explains how “specific provisions of the guidelines” — not of SORNA — “may limit their effect on sex *1144 offenders with older convictions.” Id. (emphasis added). The Attorney General, in other words, went further than just “hedgfing]” his bets about SORNA’s statutory retroactivity, as the majority acknowledges he did in the Interim Rule. Op. 1131-32. Building on that foundation, the Attorney General spelled out his own independent judgment about how his announced intentions regarding retroactive enforcement served the public interest.
Beyond that, it was eminently reasonable for the Attorney General to take Congress’s retroactivity direction as his guidepost, for “court and agency alike are bound to respect and obey Congress’s intent.” Continental Air Lines, Inc. v. Department of Transportation, 843 F.2d 1444, 1454 (D.C. Cir. 1988). That is, the Attorney General did not fail to acknowledge and exercise his discretion with respect to ret-roactivity. Rather, the Attorney General acknowledged and exercised his cabined specification authority in a manner informed by legislative intent, textual direction, and statutory purpose.
For those reasons, the more relevant case here, in my view, is Chemical Waste Management, Inc., v. United States Environmental Protection Agency, 869 F.2d 1526 (D.C. Cir. 1989). There, we upheld an agency’s rule that made retroactive a provision of the Resource Recovery and Conservation Act of 1976, 42 U.S.C. § 6901 et seq. (1988), despite the fact that the agency’s proposed rule “appeared to treat [ret-roactivity] as an accomplished fact[,]” and “assumefd] rather than invitefd] comments on this issue.” Chemical Waste Mgmt., 869 F.2d at 1535. We did so because the agency “received numerous comments on this question[,]” “extensively discussed the objections it had received, and * * * cogently explained its reasons[.]” Id.
So too here. Notwithstanding the Attorney General’s understanding of Congress’s retroactivity command, he “received numerous comments” on retroactivity, “discussed” those comments, and “cogently explained” his reasons for concluding that SORNA’s registration requirements should apply to pre-Act offenders, as well as his reasons for narrowing SORNA’s retroactive obligations in certain respects. See, e.g., 73 Fed Reg. at 38035-38036.
D
The difference in views between the majority opinion and me on this thorny question is understandable. SORNA retroactivity is a unique construct: Congress wrote the law in plainly retroactive terms that (as the Supreme Court acknowledged) the Attorney General could not realistically alter. But then Congress also charged the Attorney General with putting its purpose into practice — with figuring out how retro-activity could work for which offenders and when across myriad registration systems.
While I thus understand the genesis of the majority’s disposition, I cannot join it. I fear the majority opinion overreads the Attorney General’s duty to “specify,” treating it as a policy judgment of the type at issue in Prill, even though the Supreme Court eschewed such an understanding of the Attorney General’s role in Reynolds, 132 S.Ct. at 984. My reading of SORNA, in light of Reynolds, is that specification is instead an implementation task of providing pre-Act offenders clear notice and discerning and explicitly articulating how, when, and for whom retroactivity can feasibly be accomplished across all of the participating systems, consistently with Congress’s Spending Clause design.
The consequences of the majority opinion’s disposition, moreover, are potentially severe and far-reaching. If SORNA and our precedent demand that the Attorney General must go beyond the Final Guidelines and explicitly acknowledge and exercise an independent power “to decide for himself whether SORNA appliefe] to pre- *1145 enactment offenders[,]” Op. 1134, then SORNA may still not have any retroactive reach more than a decade after its enactment and after repeated regulatory rounds. That is because nothing in the later-issued 2010 regulations (which also predated Reynolds) recognizes or purports to make the substantive discretionary judgment the majority opinion would require, at least not in a way that materially differs from the Final Guidelines. See generally Applicability of the Sex Offender Registration and Notification Act, 75 Fed. Reg. 81849-01 (Dec. 29, 2010) (codified at 28 C.F.R. pt. 72).
To the contrary, as the majority opinion admits, the open and announced position of the Attorney General and the United States government was, until the Reynolds decision in 2012, that SORNA was retroactive upon enactment. See Op. 1134 (“Acting before the Reynolds decision, he took the view that SORNA had applied to pre-SORNA offenders ever since its enactment.”); Reynolds, 132 S.Ct. at 979 (noting that the government’s view was that a sex offender who failed to register before the Interim Rule was promulgated was in violation of SORNA’s registration requirements).
The Final Rule bears that view out. The Attorney General was explicit that “federal registration obligations on sex offenders have been in force since the enactment of SORNA.” 75 Fed. Reg. at 81850 (emphasis added). The Attorney General then went out of his way to distance his Final Rule from a court decision suggesting that SORNA required independent regulatory action to operate retroactively, emphasizing that “this publication does not reflect agreement with the conclusion! ] * * * that SORNA does not apply retroactively of its own force.” Id. That sure sounds like “the agency disavow[ed]” the very discretion that the majority opinion says that it had to exercise. Op. 1134.
To be sure, as the majority opinion notes, the Attorney General later said that “Congress at the very least placed it within the Attorney General’s discretion to apply SORNA’s requirements to sex offenders with pre-SORNA convictions if he determines (as he has) that the public benefits of doing so outweigh any adverse effects.” 75 Fed. Reg. at 81850.
But if that parenthetical “as he has” is all the discretionary reasoning that Prill requires, the government should win this case. That is because the Attorney General undertook that same independent weighing of the costs and benefits of registration in the Final Guidelines, albeit without parentheses! In responding to commenters in the Final Guidelines, the Attorney General reasoned that “the effects of SORNA’s registration and notification requirements on sex offenders are much the same regardless of whether their sex offense convictions occurred before or after SORNA’s enactment or its implementation in a particular jurisdiction,” and “the public safety concerns presented by sex offenders are much the same, regardless of when they were convicted.” 73 Fed. Reg. at 38035-38036.
The Attorney General’s “at the very least” likewise seems far too agnostic and fleeting an aside to reflect any genuine recognition of and exercise by the Attorney General of discretion ala Prill. That is particularly true given the Attorney General’s official statements bookending that language that emphatically declared that SORNA took the retroactivity decision out of his hands because it was fully retroactive of its own force upon enactment. Indeed, the Attorney General reiterated in the Final Rule, much as he did in the Final Guidelines, that any discretion he had was hemmed in by Congress’s “legislative judgment” that SORNA should apply to all sex offenders. See 75 Fed. Reg. at 81852 *1146 (“Congress’s enactment of SORNA reflects a general legislative judgment that the public safety benefits of SORNA’s requirements outweigh any adverse effects.”). Thus if the Final Rule suffices, so should the Final Guidelines.
In addition, the Attorney General’s announced position on behalf of the United States in the Reynolds litigation was explicit that retroactivity was not his call. See Brief for the United States, Reynolds v. United States, 2011 WL 2533008, at *13 (June 23, 2011) (“Petitioner’s duty to register as a sex offender under SORNA arises directly from the statute itself.”); id. (“Those [registration] requirements became effective on the date of SORNA’s enactment.”); id. at *15 (“[Petitioner’s federal duty to register and update his registration * * * arises from the statute itself[.]”); id. at *18 (“The federal directive to those sex offenders went into effect on the date of SORNA’s enactment[.]”). On top of that, the Attorney General told the Supreme Court that all his Final Rule did was “confirm that SORNA’s requirements mean what they say, i.e., they apply to all sex offenders.” Id. at *31-*32.
Given all that, it would be passing strange to say that the Attorney General somehow consciously exercised his discretion to make a policy judgment about SORNA’s retroactive application vel non in the 2010 Final Rule. The logical consequence of the majority opinion’s requirement that the Attorney General must go beyond specifying how and when retroac-tivity can come into effect, and must instead decide for himself whether SORNA applied to pre-enactment offenders at all, is that the Attorney General had to believe he had some choice in that policy matter. And as the Attorney General was not disabused of his belief that SORNA was retroactive upon enactment until the Supreme Court told him so in 2012, such recognition could not have occurred at the time he promulgated the 2010 Final Rule.
In any event, the at-least two year delay in retroactivity that the majority opinion would impose by itself could call into question hundreds of convictions.[6] And the majority opinion inflicts that cost by, in my view, overreading the scope of the Attorney General’s specification authority, and mistakenly counting for naught the Attorney General’s (i) repeated and explicit statements that SORNA applies to pre-Act offenders, (ii) explanation of how ret-roactivity will work across the varied registration systems, (iii) exercise of his statutory authority to cabin States’ obligations to register pre-Act offenders in specified circumstances, while noting its attendant impact on pre-Act offenders, and (iv) articulation of his own reasons for sharing Congress’s judgment as to the importance of such retroactive coverage in 2008. Those statements by the Attorney General constitute “specifyfing]” in the plainest sense of the term. Accordingly, I respectfully dissent.

. Highlighting the problem, both Amie Zyla's and Pam Lychner’s assailants reoffended upon release. Amie Zyla’s perpetrator was convicted of two counts of second-degree sexual assault of a child. State v. Wade, 2008 WI App 172, ¶ 1, 314 Wis.2d 745, 760 N.W.2d 183 (Wis. Ct. App. 2008). Pam Lychner’s perpetrator was convicted of failing to register as a sex offender under Texas state law. Kelley v. State, 429 S.W.3d 865, 869 (Tex. Ct. App. 2014).

. SORNA appliés to all fifty States, the District of Columbia, Guam, American Samoa, Puerto Rico, the Northern Marianas Islands, the U.S. Virgin Islands, and federally recognized Indian tribes. 42 U.S.C. § 16911(10). I use the term "State” to refer collectively to all of those covered jurisdictions.

. This more calibrated understanding of the Attorney General's specification task as working out congressionally intended retroactivity over time also ameliorates to some extent the constitutional concerns that some have recognized might arise if SORNA were read to afford the Attorney General unfettered discretion to determine whether a criminal law applies at all to half a million people. See Reynolds, 132 S.Ct. at 986 (Scalia, J., dissenting); United States v. Nichols, 784 F.3d 666, 669-672 (10th Cir. 2015) (Gorsuch, J., dissenting from denial of rehearing en banc); see generally Clark v. Martinez, 543 U.S. 371, 380-381, 125 S.Ct. 716, 160 L.Ed.2d 734 (2005) ("[Wjhen deciding which of two plausible statutory constructions to adopt, a court must consider the necessary consequences of its choice. If one of them would raise a multitude of constitutional problems, the other should prevail[.]”); Michigan Gambling Opposition v. Kempthorne, 525 F.3d 23, 33 (D.C. Cir. 2008) ("[T]he Supreme Court has ‘giv[en] narrow constructions to statutory delegations that might otherwise be thought to be unconstitutional!)]’ ") (second alteration in original) (citations omitted).

. In this case, while the District of Columbia had not yet implemented SORNA at the time of Ross's arrest for failing to register, the District had informed and obtained written acknowledgment that Ross understood his registration requirements under D.C. law when Ross was convicted of a sex offense in 1999. See United States v. Ross, 778 F.Supp.2d 13, 15 (D.D.C. 2011).

. See also The New Oxford American Dictionary 1629 (2005) ("specify” means to "identify clearly and definitely” and “state a fact or requirement clearly and precisely”); Cambridge English Dictionary Online (to "specify” is "to state or describe something clearly and exactly”), http://dictionary.cambridge.org/us/ dictionaiy/english/specify (last accessed Feb. 15, 2017).

. Between 2008 and 2010, nearly six hundred sex offenders were convicted for failing to register under SORNA. See Sex Offender Registration and Notification Act: Jurisdictions Face Challenges to Implementing the Act, and Stakeholders Report Positive and Negative Effects, U.S. Gov't Accountability Office, GAO-13-211, 54 (Feb. 7, 2013), http://www.gao. gov/assets/660/652032.pdf (last accessed Feb. 15, 2017). Given the time it generally takes to investigate, arrest, prosecute, incarcerate, and release a sex offender and commence his registration obligation, it stands to reason that a substantial number of those offenses predated SORNA’s enactment.