# United States Court of Appeals
### For the Eighth Circuit

_____

No. 13-1189

_____

United States of America,

*Plaintiff - Appellee,*

v.

James N. Coppock,

*Defendant - Appellant.*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: January 15, 2014
Filed: September 2, 2014

_____

Before WOLLMAN, COLLOTON, and GRUENDER, Circuit Judges.

_____

COLLOTON, Circuit Judge.

James Coppock, a sex offender subject to the requirements of the Sex Offender Registration and Notification Act ("SORNA"), entered a conditional guilty plea to a charge of failing to register and update his sex offender registration with Nebraska

officials, in violation of 18 U.S.C. § 2250(a). He appeals the district court's[1] denial of his motion to dismiss the indictment, arguing that his conviction under § 2250(a) is unconstitutional. Coppock argues principally that Congress lacked authority under Article I of the Constitution to impose SORNA's registration requirement on him. In light of the Supreme Court's recent decisions in *United States v. Comstock*, 560 U.S. 126 (2010), and *United States v. Kebodeaux*, 133 S. Ct. 2496 (2013), concerning the Necessary and Proper Clause of Article I, we conclude that Congress acted within its power. We therefore affirm the judgment.

I.

Coppock was convicted in 1990 by a military court of carnal knowledge and kidnaping of a minor. In February 1997, Coppock was released on military parole and came under the supervision of the United States Probation Office in the District of Nebraska until his parole expired in March 2009. In November 2009, Coppock signed an acknowledgment of his obligations to register as a sex offender and to keep that registration up to date. And in December 2009, Coppock filed a form with the State of Nebraska's sex offender registry to notify the State that he was moving from Blair, Nebraska, to Pasay City, Philippines.

Subsequent investigation by law enforcement officials revealed that Coppock never traveled to the Philippines but rather moved to Omaha, Nebraska, and worked for several employers, without notifying the State of Nebraska of these events. Coppock was arrested on May 7, 2012, and a grand jury charged him on May 22, 2012, with knowingly failing to register and update his sex offender registration with Nebraska authorities as required by SORNA. *See* 18 U.S.C. § 2250(a).

---

[1]The Honorable Joseph F. Bataillon, United States District Judge for the District of Nebraska, adopting the findings and recommendation of the Honorable F.A. Gossett, III, United States Magistrate Judge for the District of Nebraska.

SORNA, enacted in July 2006, "requires those convicted of certain sex crimes to provide state governments with (and to update) information, such as names and current addresses, for inclusion on state and federal sex offender registries." *Reynolds v. United States*, 132 S. Ct. 975, 978 (2012); *see* 42 U.S.C. § 16913. Congress delegated to the Attorney General the authority to determine whether and to what extent SORNA's requirements apply to sex offenders who, like Coppock, were convicted of their underlying sex crimes before SORNA's enactment. 42 U.S.C. § 16913(d). The Attorney General, exercising that authority, declared in 2007 that SORNA did apply to such offenders. *See Reynolds*, 132 S. Ct. at 979.

Coppock moved to dismiss the indictment, raising several constitutional challenges to the application of SORNA's registration requirements. Adopting the findings and recommendation of a magistrate judge, the district court denied the motion, and Coppock entered a conditional guilty plea. Coppock appeals the district court's denial of his motion to dismiss, and we consider the matter *de novo*. *See United States v. Waddle*, 612 F.3d 1027, 1029 (8th Cir. 2010).

## II.

Federal law makes it a crime for a sex offender convicted under federal law to fail to register or update a registration as required by SORNA. 18 U.S.C. § 2250(a). SORNA, in turn, requires a sex offender to register in certain jurisdictions and to update his registration after each change of residence or employment. 42 U.S.C. § 16913. These provisions took effect after Coppock committed his sex offense and after he was convicted, but while he was still on parole under his sentence for the offense. Coppock argues that Congress lacked authority to impose the registration requirements and to apply criminal sanctions under those circumstances. Coppock was not convicted for failing to register after traveling in interstate commerce, *see* 18 U.S.C. § 2250(a)(2)(B), so our precedents upholding the constitutionality of a prosecution under § 2250(a) in that context do not apply. *See United States v.*

*Howell*, 552 F.3d 709, 713-17 (8th Cir. 2009); *United States v. May*, 535 F.3d 912, 921-22 (8th Cir. 2008).

The question presented is whether Congress had authority, under the Military Regulation and Necessary and Proper Clauses of Article I, *see* U.S. Const. art. I, § 8, cls. 14, 18, to impose SORNA's registration requirements on a federal sex offender who was on parole for his federal sex offense at the time of SORNA's enactment, and to enforce those requirements through the criminal prohibition of § 2250(a). Jurisprudence under the Necessary and Proper Clause, of course, dates to the earliest decisions of the Supreme Court, including Chief Justice Marshall's famous opinion in *McCulloch v. Maryland*, 17 U.S. 316 (1819). The Supreme Court recently opined on the Clause's scope as applied to federal prisoners in *United States v. Comstock*, 560 U.S. 126 (2010), and addressed the Clause's application to Congress's power to prescribe rules for the regulation of the land and naval forces in *United States v. Kebodeaux*, 133 S. Ct. 2496 (2013). These decisions guide our analysis. We also must be mindful that "[d]ue respect for the decisions of a coordinate branch of Government demands that we invalidate a congressional enactment only upon a plain showing that Congress has exceeded its constitutional bounds." *United States v. Morrison*, 529 U.S. 598, 607 (2000).

In *Comstock*, the Supreme Court concluded that Article I authorizes Congress to enact a civil-commitment statute providing for detention of "a mentally ill, sexually dangerous federal prisoner beyond the date the prisoner would otherwise be released." 560 U.S. at 129. The Court identified several considerations that informed its holding. Most relevant to our inquiry is the Court's conclusion that the civil-commitment scheme was "reasonably adapted to Congress' power to act as a responsible federal custodian" over those who have violated federal criminal laws. *Id.* at 143 (internal quotation and citation omitted). In examining the connection between the civil-commitment statute and Congress's Article I powers, the Court explained:

Congress has the implied power to criminalize any conduct that might interfere with the exercise of an enumerated power, and also the additional power to imprison people who violate those (inferentially authorized) laws, and the additional power to provide for the safe and reasonable management of those prisons, *and the additional power to regulate the prisoners' behavior even after their release.*

*Id.* at 147 (emphasis added). After discussing other considerations, including "the breadth of the Necessary and Proper Clause," "the long history of federal involvement" in the civil commitment of federal prisoners, and "the statute's accommodation of state interests," the Court concluded that the civil-commitment scheme was a necessary and proper means for Congress to exercise its Article I powers. *Id.* at 149.

In *Kebodeaux*, the Court decided that Congress had authority under Article I to impose SORNA's registration requirements on an offender who had committed a sex offense while serving in the military:

[U]nder the authority granted to it by the Military Regulation and Necessary and Proper Clauses, Congress could promulgate the Uniform Code of Military Justice. It could specify that the sex offense of which Kebodeaux was convicted was a military crime under that Code. It could punish that crime through imprisonment and by placing conditions upon Kebodeaux's release. And it could make the civil registration requirement at issue here a consequence of Kebodeaux's offense and conviction.

133 S. Ct. at 2503. *Kebodeaux* establishes, therefore, that Congress has some degree of authority to apply SORNA to federal sex offenders based on violations of the Uniform Code of Military Justice, and to punish violations of SORNA with criminal penalties under § 2250(a).

The government's assertion of power in this case goes a step beyond *Kebodeaux*. There, although SORNA was enacted after the sex offender was released from federal custody, the Court relied on the preexisting registration requirements of the Wetterling Act of 1994: "[A]s of the time of Kebodeaux's offense, conviction and release from federal custody," *id.* at 2502, the Court explained, the Wetterling Act imposed federal registration requirements similar to those that Congress later enacted in SORNA. The Court reasoned that "the Necessary and Proper Clause authorized Congress to modify the requirement" already applicable to the offender through the Wetterling Act. *Id.*

Here, by contrast, Coppock's sex offense and conviction occurred prior to both the enactment of SORNA and the enactment of the Wetterling Act. As applied to Coppock, then, SORNA cannot be justified as a necessary and proper modification of federal registration requirements already in place at the time of Coppock's offense and conviction. Nor can the government rely in Coppock's case on the idea that "[a] servicemember will be less likely to violate a relevant military regulation if he knows that, having done so, he will be required to register as a sex offender years into the future." *Id*. at 2506 (Roberts, C.J., concurring in the judgment). Coppock could not have known about the later-enacted registration requirements of the Wetterling Act and SORNA when he violated military regulations.

Nonetheless, while *Kebodeaux* held that the conditions in that case were *sufficient* to authorize congressional action under Article I, the Court did not hold that Congress's power to require registration by federal sex offenders was limited to offenders who violated military regulations after the Wetterling Act came into effect. Coppock was still on federal parole when the Wetterling Act and SORNA were enacted; he was not unconditionally released. As to that scenario, there are suggestions in *Comstock* and *Kebodeaux* that legislation imposing sex offender registration requirements is authorized by the Necessary and Proper Clause.

-6-

*Comstock* strongly affirmed Congress's "power to act as a responsible federal custodian" of those, like Coppock, who have violated federal law—even to the point of requiring potentially indefinite civil commitment. 560 U.S. at 143. The federal government, the Court declared, "has the constitutional power to act in order to protect nearby (and other) communities from the danger federal prisoners may pose." *Id*. at 142. If Congress may extend a civil-commitment system to federal prisoners, and may thereby refuse to release some prisoners at all in order to avert reasonably foreseeable danger to other citizens, then it seems to follow that Congress may apply to federal prisoners a less restrictive registration system that is designed to protect others from the risk of recidivism after a sex offender is released.

The Court in *Kebodeaux* similarly declared that "'it is entirely reasonable for Congress to have assigned the Federal Government a special role in ensuring compliance with SORNA's registration requirements by federal sex offenders—persons who typically would have spent time under federal criminal supervision.'" 133 S. Ct. at 2504 (quoting *Carr v. United States*, 560 U.S. 438, 452 (2010)). The government's interest in keeping track of former federal prisoners to prevent further crimes applies with equal force to a pre-Wetterling Act offender who is still on parole for a federal sex offense as it does to one who commits his offense after the Act's passage. And Justice Alito, concurring in the judgment in *Kebodeaux*, deemed it necessary and proper for Congress to require registration of members of the military who are convicted of a qualifying sex offense in federal court, because the exercise of military jurisdiction may supersede state prosecutions and thereby create a gap in the laws intended to maximize the registration of sex offenders. *Id*. at 2508-09 (Alito, J., concurring in the judgment). The same gap-filling rationale presumably would apply to a parolee who was prosecuted by federal authorities for a sex offense before a federal registration requirement was developed.

For these reasons, we think the Court's most recent applications of the Necessary and Proper Clause counsel that the SORNA registration requirements and

criminal sanctions for noncompliance are constitutional as applied to Coppock. Significantly, this is not a case in which the government seeks to punish an offender for violating restrictions imposed on him "years after [his] unconditional release," pursuant to an expansive claim of a nonexistent federal police power. *Id*. at 2507 (Roberts, C.J., concurring in the judgment). Our decision here applies only to a sex offender who—at the time the registration requirements came into effect—was under federal parole supervision based on a conviction under federal law, and thus remained in a "special relationship with the federal government." *Id*. at 2504 (majority opinion) (internal quotation omitted).

Coppock's alternative contentions that Congress unconstitutionally delegated legislative power by authorizing the Attorney General to determine SORNA's retroactive effect, *see* 42 U.S.C. § 16913(d), and that his conviction under 18 U.S.C. § 2250(a) amounts to *ex post facto* punishment for his pre-SORNA sex offense, are foreclosed by precedent. *United States v. Kuehl*, 706 F.3d 917, 920 (8th Cir. 2013); *United States v. Voice*, 622 F.3d 870, 879 (8th Cir. 2010).

\* \* \*

The judgment of the district court is affirmed.

_____