Opinion concurring in part, dissenting in part, and dissenting from the judgment filed by Circuit Judge MILLETT.
WILLIAMS, Senior Circuit Judge:
Anthony T. Ross was convicted in 1999 of misdemeanor sexual assault. In 2009 he moved from Washington D.C. to Ohio, and on October 7, 2010 he was indicted for failing to register with local authorities pursuant to the Sex Offender Registration and Notification Act (“SORNA”). See 120 Stat. 587, 590 (2006), 42 U.S.C. § 16901 et seq.; 18 U.S.C. § 2250(a). The act, passed by Congress in 2006, “seeks ... to make more uniform and effective” the “patchwork of federal and 50 individual state [sex offender] registration systems,” Reynolds v. United States, 565 U.S. 432, 132 S.Ct. 975, 978, 181 L.Ed.2d 935 (2012). In pursuit of that goal, SORNA imposes federal criminal penalties on a person who is subject to the act’s registration requirements, who “travels in interstate or foreign com *1131 merce,” and who knowingly fails to update his registration when required by the act to do so. § 2250(a).
Ross moved to dismiss the indictment, claiming a number of flaws in its legal basis, two of which he presses before us. His sexual assault conviction had preceded SORNA’s 2006 enactment, and the Supreme Court has established that SORNA did not apply to such persons on its own but could be made applicable only if the Attorney General so “specified].” Reynolds v. United States, 565 U.S. 432, 132 S.Ct. 975, 984, 181 L.Ed.2d 935 (2012). Ross argued first that insofar as the Attorney General took steps before Ross’s alleged SORNA violation to “specify” the act’s application to pre-SORNA offenders, those efforts were defective under the Administrative Procedure Act, 5 U.S.C. § 551 et seq. Second, he argued that Congress’s vesting the Attorney General with such authority violated the constitutional rule against undue delegation of legislative authority. See United States v. Ross, 778 F.Supp.2d 13, 16 (D.D.C. 2011). The district court denied Ross’s motion to dismiss, and Ross entered a conditional guilty plea, reserving his right to appeal on the legal issues.
All the other geographic circuits have addressed the non-delegation claim and have rejected it. United States v. Nichols, 775 F.3d 1225, 1231 (10th Cir. 2014), rev’d on other grounds, — U.S. -, 136 S.Ct. 1113, 194 L.Ed.2d 324 (2016); United States v. Richardson, 754 F.3d 1143, 1146 (9th Cir. 2014); United States v. Cooper, 750 F.3d 263, 271-72 (3d Cir. 2014); United States v. Goodwin, 717 F.3d 511, 516-17 (7th Cir. 2013); United States v. Kuehl, 706 F.3d 917, 920 (8th Cir. 2013); United States v. Sampsell, 541 Fed.Appx. 258, 259-60 (4th Cir. 2013); United States v. Parks, 698 F.3d 1, 7-8 (1st Cir. 2012); United States v. Felts, 674 F.3d 599, 606 (6th Cir. 2012); United States v. Guzman, 591 F.3d 83, 92-93 (2d Cir. 2010); United States v. Whaley, 577 F.3d 254, 262-64 (5th Cir. 2009); United States v. Ambert, 561 F.3d 1202, 1212-14 (11th Cir. 2009). But see United States v. Nichols, 784 F.3d 666, 667-77 (10th Cir. 2015) (Gorsuch, J., dissenting from denial of rehearing en banc). On the view we take of Ross’s APA claims we need not reach the delegation issue. Concluding that the act did not apply to pre-SORNA offenders at the time of' Ross’s charged conduct because of the Attorney General’s APA violations, we reverse the district court ruling and vacate the conviction.
[[Image here]]
SORNA requires sex offenders to maintain registrations “where the offender resides, where the offender is an employee, and where the offender is a student.” 42 U.S.C. § 16913; see United States v. Kebodeaux, — U.S. -, 133 S.Ct. 2496, 2499, 186 L.Ed.2d 540 (2013). If a person is convicted of a sex offense after SORNA’s enactment, he must register under time limits specified in the act. And he must keep the registration current by updating his registration within three business days of any “change of ... residence.” § 16913(c). .
For persons convicted before SORNA’s enactment, however, the act provides that the “Attorney General shall have the authority to specify the applicability of [SOR-NA’s] requirements,” § 16913(d), and the Supreme Court has read the act not to make its registration requirements applicable “to pre-Act offenders until the Attorney General so specifies,” Reynolds, 132 S.Ct. at 984. What is critical for our purposes is when the Attorney General so specified.
The most obvious candidate for this specification is a rule the Attorney General issued in December 2010 after a rulemak-ing whose APA compliance is not contest *1132 ed here. Applicability of the Sex Offender Registration and Notification Act, 75 Fed. Reg. 81849, 81850/2 (Dec. 29, 2010) (codified at 28 C.F.R. part 72) (the “Final Rule”) (explicitly making SORNA applicable to “sex offenders convicted ... prior to the enactment of that Act” (internal quotation marks omitted)). But this rule took effect too late to support Ross’s conviction for failure to update his registration in the wake of his 2009 move to Ohio.
The government contends that two earlier actions sufficed: an interim rule issued in 2007 and “guidelines” proposed in 2007 and finalized in 2008. We find them inadequate.
In 2007 the Attorney General adopted an interim rule declaring SORNA applicable to pre-enactment offenders. Applicability of the Sex Offender Registration and Notification Act, 72 Fed. Reg. 8894, 8897/3 (Feb. 28, 2007) (the “Interim Rule”). In the preamble, the Attorney General expressed his view — later rejected by Reynolds — that the requirements for pre-SOR-NA offenders automatically “took effect when SORNA was enacted on July 27, 2006.” Id. at 8895/3. He also hedged, stating that he was “exercising] his authority ... to specify this scope of application for SORNA, regardless of whether SORNA would apply with such scope absent this rule.” Id. 8896/2 (emphasis added). But he issued the rule without providing for advance notice or inviting comment, as required by the APA, see 5 U.S.C. § 553(b)-(d), instead making the rule effective immediately, with provision for comments thereafter. To justify that shortcut, he invoked the “good cause” exceptions of § 553(b), (d), specifically the allowance for instances where providing notice and comment would be “contrary to the public interest.” Interim Rule, 72 Fed. Reg. at 8896/3-8897/1. He claimed that “immediate effectiveness” was needed to “protect the public from sex offenders” by “eliminating] any possible uncertainty about the applicability of the Act’s requirements.” Id. at 8896/3. Delay would thwart these goals, he said, “because a substantial class of sex offenders could evade the Act’s registration requirements ... during the pen-dency of a proposed rule.” Id. at 8897/3.
We’ve said that the “ ‘good cause’ exception ... is to be ‘narrowly construed and only reluctantly countenanced.’ ” Jifry v. F.A.A., 370 F.3d 1174, 1179 (D.C. Cir. 2004) (quoting Tennessee Gas Pipeline Co. v. FERC, 969 F.2d 1141, 1144 (D.C. Cir. 1992)). We review the agency’s finding of good cause de novo. Sorenson v. F.C.C., 755 F.3d 702, 706 (D.C. Cir. 2014). Here the decisions of Congress and the Attorney General himself bely any claim that there existed such a pressing need for immediate action as to warrant brushing aside the statutory notice-and-comment requirements.
Far from seeking “immediate effectiveness,” Congress built in at least some delay with its provision for the Attorney General to “specify” the act’s application to pre-SORNA offenders, thereby allowing him, as the Reynolds Court observed, to work out a wide range of “complexities, lacunae, and difficulties” that application to pre-SORNA offenders would entail. Reynolds, 132 S.Ct. at 982. The Court also observed that Congress had allowed states three years to implement SORNA’s requirements (extendable by the Attorney General to five), id. at 981, and that the government had “overstated the need for instantaneous registration,” id. at 983. Of course a relaxed statutory schedule (or no deadline at all) would not militate against dispensing with notice and comment if some emergency had arisen after enactment, as did the 9/11 attacks, see Jifry, 370 F.3d at 1179-80, but the government points to no such unexpected development here.
*1133 The Attorney General’s own behavior also undercuts the current claim of urgency: as Reynolds observed, he waited over half a year — 217 days — after the effective date of the act to publish the Interim Rule. 132 S.Ct. at 983. In this context, the incremental delay entailed by a 30-day comment period and the requisite time for thinking about comments seems a very reasonable trade-off — and its denial unreasonable.
Because the Interim Rule “utterly] failfed] to comply with notice and comment,” this error “cannot be considered harmless if there is any uncertainty at all as to the effect of that failure.” Sprint Corp. v. F.C.C., 315 F.3d 369, 376 (D.C. Cir. 2003). The government suggests that its reaching the same conclusion in the Final Rule and in its SORNA guidelines (discussed below), despite having received numerous comments, dispels any uncertainty. That argument might justify treating the Final Rule as effective. See Federal Express Corp. v. Mineta, 373 F.3d 112, 120 (D.C. Cir. 2004). But. it is the Interim Rule that the government is using to justify the indictment for conduct occurring before the Final Rule-, procedurally sound adoption of a rule after the conduct affected can have no legitimate effect on that conduct. See Sorenson, 755 F.3d at 705-06 & n.2. To find an agency’s short-circuiting of notice-and-comment harmless, we have relied on true inevitability — cases where to heed adverse comments the agency would have had to violate the controlling statute, see City of Portland v. EPA, 507 F.3d 706, 714-16 (D.C. Cir. 2007); Sheppard v. Sullivan, 906 F.2d 756, 762 (D.C. Cir. 1990). More generally, if brute persistence alone could cure a failure to invite comment, agencies would have a perverse incentive to disregard the comments they received once they got around to allowing them. Cf. Mack Trucks, Inc. v. EPA, 682 F.3d 87, 95 (D.C. Cir. 2012) (if belated comment-taking cured all error, “agencies would have no use for the APA”). We join the circuits that have invalidated the Interim Rule. See United States v. Brewer, 766 F.3d 884, 892 (8th Cir. 2014); United States v. Reynolds, 710 F.3d 498, 524 (3d Cir. 2013); United States v. Valverde, 628 F.3d 1159, 1168-69 (9th Cir. 2010); United States v. Utesch, 596 F.3d 302, 312 (6th Cir. 2010). But see United States v. Johnson, 632 F.3d 912, 930, 933 (5th Cir. 2011) (finding no good cause but error harmless); United States v. Dean, 604 F.3d 1275, 1282 (11th Cir. 2010) (holding that Attorney General had good cause to dispense with notice and comment); United States v. Gould, 568 F.3d 459, 470 (4th Cir. 2009) (same); United States v. Dixon, 551 F.3d 578, 583 (7th Cir. 2008) (calling attack on lack of notice and opportunity to comment on Interim Rule “frivolous”), rev’d on other grounds sub nom. Carr v. United States, 560 U.S. 438, 130 S.Ct. 2229, 176 L.Ed.2d 1152 (2010).
The government next points to the “guidelines” that the Attorney General finalized in 2008. The Attorney General is tasked with determining which states have updated their sex offender registries to comply with SORNA; a state’s failure to do so entails a federal funding haircut. 42 U.S.C. § 16925(a). Accordingly, the Attorney General developed guidelines to “asr sist[ ] ... the states and other jurisdictions in incorporating the SORNA requirements into their sex offender registration and notification programs.” The National Guidelines for Sex Offender Registration and Notification, 73 Fed. Reg. 38030, 38030/1-2 (July 2, 2008) (the “Final Guidelines”). The Final Guidelines might be taken to satisfy 42 U.S.C. § 16913(d)’s requirement that the Attorney General “specify” SORNA’s retroactive effect. At the head of a section in the Introduction captioned “Retroactivity,” they explain that the guidelines “require the application by a jurisdiction of SORNA’s requirements to sex offenders convicted prior to the *1134 enactment of SORNA....” 73 Féd. Reg. at 38035/3; see also The National Guidelines for Sex Offender Registration and Notification, 72 Fed. Reg. 30210, 30212/3-13/1 (May 30, 2007) (the proposed guidelines). Interestingly, here the Attorney General gave notice and invited comment. 72 Fed. Reg. at 30210/1. He received abundant response, representing both state government and sex offender interests, many arguing against retroactive application, particularly to juvenile offenders. See E-mail from Wayne Harper, Utah House of Representatives, to Melanie Bowen, Staff, U.S. Senate & GetSmart, U.S. DOJ, at 1 & attached letter at 2 (July 31, 2007); Letter from Arthur E. Grim, Chairman, Pa. Juvenile Ct. Judges’ Comm’n, to Laura L. Rogers, Director, U.S. DOJ, at 2 (July 25, 2007); E-mail from Redacted, to GetS-mart, U.S. DOJ, at 1 (July 31, 2007). Each of the foregoing comments is available at https://web.archive.org/web/200803 13001315/http://www.ojp.usdoj.gov/smart/ pdfs/guideIine_comments.pdf.
The Final Guidelines, however, do not appear to represent an effort to “specify” retroactive application to offenders as required by Reynolds. The Guidelines’ ret-roactivity language, quoted above, merely sets the stage for the document’s real purpose: spelling out what the states and other governmental bodies must do to handle the new registration mandates, including those the Interim Rule arguably “specified.” See 72 Fed. Reg. at 30212/3 (proposed guidelines’ “Retroactivity” discussion noting practical challenges jurisdictions face in identifying pre-Act offenders); 73 Fed. Reg. at 38031/1 (Final Guidelines “clarifying that jurisdictions may rely on their normal methods and standards” to search criminal records for pre-Act offenders who must register). Thus the Final Guidelines appear to simply represent the latter half of the Attorney General’s bifurcated SORNA rule-making effort, which paralleled SORNA’s “two sorts” of requirements: (1) specifying offenders’ “registration obligations ... as a matter of federal law”; and (2) advising jurisdictions on incorporating “SORNA standards in their own” programs. See Interim Rule, 72 Fed. Reg. at 8895/2; see also id. at 8896/1 (promising to later “issue general guidelines to provide guidance and assistance to the states ... in implementing SORNA”).
But even if we were to resolve that issue in favor of the government, the Final Guidelines would still suffer a fatal flaw: the Attorney General disclaimed any.authority to decide for himself whether SOR-NA applied to pre-enactment offenders. Acting before the Reynolds decision, he took the view that SORNA had applied to pre-SORNA offenders ever since its enactment. 73 Fed. Reg. at 38046/2 (“SORNA’s requirements took effect when SORNA was enacted on July 27, 2006, and they have applied since that time to all sex offenders, including those whose convictions predate SORNA’s enactment.”). Although he disagreed with the commenters’ idea that pre-SORNA offenders should be treated differently, he said that “in any event” he “could not” depart from Congress’s “legislative judgment that SOR-NA’s registration and notification requirements ... are justified by the resulting benefits in promoting public safety.” Id. at 38035/3-36/1.
Where a statute grants an agency discretion but the agency erroneously believes it is bound to a specific decision, we can’t uphold the result as an exercise of the discretion that the agency disavows. Prill v. NLRB, 755 F.2d 941, 947-48 (D.C. Cir. 1985); see also Peter Pan Bus Lines, Inc. v. Fed. Motor Carrier Safety Admin., 471 F.3d 1350, 1353-54 (D.C. Cir. 2006). Obviously the agency hasn’t exercised the discretion Congress granted, on which exercise the legitimacy of the outcome depends. As Reynolds explains, Congress *1135 added the “specify” clause so that the Attorney General could “fill[ ] potential lacunae (created by related Act provisions)” and “diminish or eliminate those uncertainties” around SORNA’s requirements. 132 S.Ct. at 982. Here, the Attorney General expressly — and erroneously — imputed to Congress “a legislative judgment” that the public safety “benefits” of imposing registration on pre-SORNA offenders outweighed the burdens on sex offenders, leaving no room for him to balance them. See 73 Fed. Reg. at 38036/1. By the time of the Final Rule, the Attorney General eased off his insistence that SORNA automatically established criminal liability for pre-Act offenders, saying that “Congress at the very least placed it within the Attorney General’s discretion to apply SORNA’s requirements to [pre-SORNA offenders] if he determines (as he has) that the public benefits of doing so outweigh any adverse effects.” 75 Fed. Reg. at 81850/3.
The government insists that the Attorney General exercised his discretion to specify SORNA’s pre-Act reach despite his “view” that Congress had settled the matter. Appellee Br. at 21. Agencies can certainly rely on alternative rationales, provided that they make those alternatives explicit, as the Attorney General did in the Final Rule. See Nat’l Fuel Gas Supply Corp. v. FERC, 468 F.3d 831, 839 (D.C. Cir. 2006). But until the Final Rule the Attorney General failed to pursue that path — he recognized and exercised discretion only in areas separate from pre-SOR-NA offenders’ registration obligations, such as questions of what duties should be imposed on the states under SORNA to register pre-SORNA offenders, juveniles, and offenders convicted abroad. 73 Fed. Reg. at 38031/1, 38041/1-2.
The dissent disagrees on this final point and reads the Attorney General’s decisions defining the states’ obligations to track pre-SORNA offenders as simultaneously creating retroactive criminal responsibility for pre-Act sex offenders. Dissent at 1141-43. The dissent’s logic seems to be that a non-registering sex offender violates SOR-NA only to the extent that a SORNA-compliant state program required him to register. This linkage of state duties with sex offender obligations, if it were correct, would tend to fill the pre-Final Rule gap in the Attorney General’s exercise of discretion: were SORNA-compliant state registration programs necessary for sex offender liability, it would not be a great leap to regard guidelines for how those programs must register pre-SORNA offenders as a sufficient exercise of the Attorney General’s authority to specify retro-activity.
But any such linkage is belied by the Reynolds decision and the government’s conduct. Reynolds emphasized that SOR-NA empowered. the Attorney General to adopt a rule applying SORNA to “all preimplementation offenders.... quickly, well before a jurisdiction implements the Act’s requirements.” 132 S.Ct. at 983.
Moreover, pace our dissenting colleague, the Attorney General has acted accordingly, continuously insisting on a separation between the imposition of criminal liability and the establishment of SORNA-compli-ant registration systems. For example, the government has maintained in this litigation that sex offender liability is quite independent of a jurisdiction’s SORNA compliance. Though acknowledging- that the District had no SORNA-compliant system in place at the relevant time, the government argued (successfully) that Ross had a federal duty to register as long as his place of residency had a registration “procedure in place,” regardless of whether it was compliant.[1] Ross, 778 F.Supp.2d at 23. *1136 Ross’s conviction depended on that ruling. It is matched by convictions the government has secured in other circuits when the offender’s state had neither implemented the act nor provided notice of SORNA’s obligations. See, e.g., United States v. Elk Shoulder, 738 F.3d 948, 954-55 (9th Cir. 2013); Felts, 674 F.3d at 603-04 & n.1; United States v. Heth, 596 F.3d 255, 258-60 & n.3 (5th Cir. 2010); United States v. Brown, 586 F.3d 1342, 1350-51 (11th Cir. 2009); Gould, 568 F.3d at 466-69; United States v. Hester, 589 F.3d 86, 91-93 (2d Cir. 2009).
There are additional grounds for rejecting the idea that the Attorney General intended to make sex offenders’ criminal liability under 18 U.S.C. § 2250 track states’ adoption of SORNA-compliant registration systems. The Attorney General’s Interim Rule, for example, provides: “In contrast to SORNA’s provision of a three-year grace period for jurisdictions to implement its requirements, SORNA’s direct federal law registration requirements for sex offenders are not subject to any deferral of effectiveness. They took effect when SORNA was enacted on July 27, 2006, and currently apply to all offenders in the categories for which SORNA requires registration.” 72 Fed. Reg. at 8895/3.
The dissent argues that the Attorney General left states some slack in how they structure their registration systems and that these concessions necessarily eased SORNA’s requirements on offenders as well. Dissent at 1141-43. The Attorney General did say that aspects of his retroac-tivity guidelines “may” indirectly “limit their effect on” pre-SORNA offenders. 73 Fed. Reg. at 38036/1. But these provisions simply reduced the federal burden on states to actively seek out and register sex offenders with “older convictions” who are off the justice system’s radar.[2] Id. Such an offender would benefit collaterally, as there would be less likelihood of state officials taking affirmative steps to rope him in. And to the extent that some states use the leeway provided to de facto thwart pre-SORNA offenders’ ability to register (e.g., not allowing registration under circumstances applicable to some offenders), those offenders would have a defense of infeasibility under federal law. 18 U.S.C. § 2250(c). But this collateral benefit for offenders could hardly have been the Attorney General’s intent when he offered states some relief from the task of physically tracking down every living pre-SOR-NA offender. Instead, the Attorney General made clear his view — correct or not— that federal liability would attach to the offender regardless of whether his state has met, exceeded, or fallen short of SOR-NA’s funding conditions. As he • put it, “While SORNA’s requirements apply to all sex offenders ... the guidelines do not require jurisdictions to identify and register every such offender.” 73 Fed Reg. at 38036/1; see id. at 38035/2 (noting that SORNA “requires a sex offender to register ‘for the full [federal] registration period’” unless the statutory “clean record” exception applies).
In short, the Attorney General, from his first official pass on the meaning and effect *1137 of SORNA to the litigation of this case, has seen two distinct but related domains — the establishment of criminal liability for pre-Act sex offenders, and the design of the conditions necessary for states (and other affected jurisdictions) to secure funding for SORNA compliance. We all agree that the second has collateral effects on sex offenders; our dissenting colleague believes that the Attorney General’s action in the second domain, simply because of those collateral effects, suffices for exercise of discretion in the first domain. Had the Attorney General openly interpreted SORNA the way the dissent does — requiring “a knowing failure to register under a state system,” Dissent at 1140 — we might agree. But because the issue here is what the Attorney General said he was doing, we have little choice other than to infer that the government’s words were serious: that pre-Act sex offenders required to register by SORNA are guilty of a violation even if the relevant state has not sought to register the defendant in compliance with SOR-NA (though under some circumstances state noncompliance may give the offender an intent or impossibility defense). Indeed, the government has successfully prosecuted for failure to register an offender who lacked notice of SORNA and whose state didn’t require him to register at all. United States v. Pendleton, 636 F.3d 78, 85 (3d Cir. 2011).
Apropos the dissent, its suggestion that our holding will have “potentially severe and far-reaching” consequences rests on the idea that even in the Final Rule the Attorney General failed to “exercise[ ] his discretion to make a policy judgment about SORNA’s retroactive application vel non.” Dissent at 1144 (first quote), 1146 (second). But as we already noted, that rule did recognize his authority, albeit reluctantly and contingently: “Congress at the very least placed it within the Attorney General’s discretion to apply SOR-NA’s requirements to [pre-SORNA offenders] if he determines (as he has) that the public benefits of doing so outweigh any adverse effects.” Final Rule, 75 Fed. Reg. at 81850/3.
A number of other circuits have found that the Final Guidelines properly specified SORNA’s application to pre-enactment offenders. But in those cases the principle we adopted in Prill was not invoked, and their opinions accordingly focused on other purported deficiencies in the Final Guidelines. See United States v. Manning, 786 F.3d 684, 686-87 (8th Cir. 2015) (finding that the guidelines “were an act of substantive rulemaking” and “satisfied the notice and comment requirements”); United States v. Lott, 750 F.3d 214, 217-21 (2d Cir. 2014) (rejecting claims that the guidelines were mere interpretive rules and that they failed to follow notice- and-comment procedures); United States v. Whitlow, 714 F.3d 41, 45-47 (1st Cir. 2013) (rejecting arguments that the guidelines invoked the incorrect statutory authority and failed to allow meaningful comment by “ ‘assuming]’ retroactivity”); United States v. Stevenson, 676 F.3d 557, 563-65 (6th Cir. 2012) (rejecting claim that the guidelines relied on incorrect statutory authority); Valverde, 628 F.3d at 1160 (holding, without discussion, that the final guidelines made SORNA applicable to pre-enactment offenders).
Aside from the Interim Rule and the Final Guidelines, the government points to no other administrative act that would have timely created an obligation on Ross’s part to comply with SORNA’s mandate. This gap defeats the indictment.
[[Image here]]
The ruling of the district court is reversed, and the judgment of conviction is vacated.

So ordered.

. Ohio had already implemented SORNA. U.S. Dep’t of Justice, SORNA Implementation *1136 Review: State of Ohio (Sept. 2009). The government's argument seems to assume that SORNA required Ross both to register in Ohio and to “notiffy] the District of Columbia of his move.” Ross, 778 F.Supp.2d at 16. Although not contested by Ross, this latter requirement has since been foreclosed by Nichols v. United States, - U.S. -, 136 S.Ct. 1113, 1116-17, 194 L.Ed.2d 324 (2016).

. An additional purported reduction, the allowance of credit to pre-SORNA offenders for time elapsed since release from prison, involved no discretion at all: the Attorney General properly described it as a simple mathematical outcome of SORNA's time "limits on the required duration of registration.” Id. at 38046/3.